**FILED**

**September 23, 2015**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 2:37 PM**



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | | |
|---|---|---|
| Monica Kleeberg, | ) | Docket No.: 2015-01-0134 |
| Employee, | ) | |
| v. | ) | State File Number: 44486/2015 |
| Profit Line Services, Inc., | ) | |
| Employer. | ) | Judge Thomas Wyatt |

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS
### (RECORD REVIEW ONLY)

The Court considers this claim on the request of the Employee, Monica Kleeberg, for a determination on the record without an evidentiary hearing. The present issues before the Court are the compensability of Ms. Kleeberg's injury and whether she was an employee or independent contractor at the time of her injury.[1] The Employer, Profit Line Services, Inc. (Profit Line), appears before the Court without representation by counsel.[2] For the reasons set forth below, the Court finds Ms. Kleeberg sustained a compensable injury and, on the date of injury, was an employee of Profit Line. Accordingly, the Court awards Ms. Kleeberg the medical benefits she seeks, but, at the present time, denies her request for temporary partial disability benefits.

### History of Claim

Ms. Kleeberg is a fifty-one year-old resident of Hamilton County, Tennessee. (T.R. 1 at 1.) She worked approximately one month as a housekeeper at the Embassy Suites-Hamilton Place Hotel (Embassy Suites) in Chattanooga, Tennessee before she was injured on May 9, 2015. (T.R. 3 at 4.) Ms. Kleeberg received her paycheck from Profit

---

[1] Additional information about the exhibits considered by the Court and the technical record is contained in the attached Appendix.

[2] Tennessee Compilation Rules & Regulations 0800-02-21-.05(1)(c), (d) (2014) require that a corporation appear before the Court through attorney representation. Therefore, in an in-person hearing, the Court would not consider evidence submitted by, or positions contended by, a non-attorney party representing Profit Lines. *See Higgins v. Big K Food Market & Liquors, Inc.*, No. 2014-01-0007, 2014 TN Wrk. Comp. App. Bd. LEXIS 3, at *9-12 (Tenn. Workers' Comp. App. Bd. Dec. 8, 2014.) However, in an on-the-record determination, the Court does not know the identity of the party submitting the materials contained in the court file. Accordingly, the Court will consider all documents in the file.

1

Line (T.R. 3 at 6, 7), which had a Service Agreement with Embassy Suites "for the provision of . . . *housekeeping*, laundry, . . . or other such jobs or tasks agreed upon." (Ex. 3.) (Emphasis added.)

On May 9, 2015, Ms. Kleeberg slipped on water and fell in the lobby of the Embassy Suites. (T.R. 3 at 4; Ex. 10 at 2.) The fall occurred as she walked to the laundry room to pick up linen for a bedroom she was cleaning. (Ex. 10 at 2.) Ms. Kleeberg injured her left wrist in the fall. (T.R. 3 at 4.)

Ms. Kleeberg reported her injury to her supervisor, who told her to say the injury occurred at home. (T.R. 3 at 4.) Ms. Kleeberg immediately sought emergency care on her own at an Erlanger Medical Center satellite facility. (Ex. 1 at 4-7; Ex. 10 at 2, 3.) X-rays of Ms. Kleeberg's left wrist revealed a fracture of the radius bone. (Ex. 1 at 8.) Ms. Kleeberg came under the care of Dr. J. Woodfin Kennedy, who surgically repaired her left wrist at Erlanger Medical Center on June 1, 2015. (Ex. 1 at 1-2.)

Ms. Kleeberg sought workers' compensation benefits from Profit Line without success. On June 12, 2015, she filed a Petition for Benefit Determination seeking medical and temporary disability benefits. (T.R. at 1.) On July 23, 2015, the assigned mediating specialist issued a Dispute Certification Notice indicating, "[e]ach of the employers listed deny that they owe benefits. The employers state that the employee is a contractor and not an employee." (T.R. 2 at 1.) On August 3, 2015, Ms. Kleeberg filed a Request for Expedited Hearing, with an accompanying affidavit, for an on-the-record determination. (T.R. 3.) Profit Line did not object to an on-the-record determination.

On August 13, 2014, the Court issued an Order informing the parties it would determine Ms. Kleeberg's Request for Expedited Hearing on the record. (T.R. 4.) The Order also advised Profit Line that a corporation must appear before the Court through attorney representation and the Court would not consider any statement by, or material submitted from, a non-attorney on behalf of Profit Line. (T.R. 4.) Profit Line remains before the Court without attorney representation..

## Findings of Fact and Conclusions of Law

### General Legal Principles

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall*

2

*v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987);[3] *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

*Ms. Kleeberg Was an Employee at the Time of Injury.*

Tennessee Code Annotated section 50-6-102(11)(D) (2014) provides:

In a work relationship, in order to determine whether an individual is an "employee," or whether an individual is a "subcontractor" or an "independent contractor," the following factors should be considered:
(i)     The right to control the conduct of the work;
(ii)    The right of termination;
(iii)   The method of payment;
(iv)    The freedom to select and hire helpers;
(v)     The furnishing of tools and equipment;
(vi)    Self-scheduling of working hours; and
(vii)   The freedom to offer services to other entities[.]

While no single factor is determinative when deciding whether a worker is an employee or an independent contractor, the Supreme Court has repeatedly emphasized the importance of the right to control the work when distinguishing employees and independent contractors, the relevant inquiry being whether the right existed, not whether it was exercised. *Galloway v. Memphis Drum Service,* 822 S.W.2d 584, 586 (Tenn. 1991); *Jewell v. Cobble Const. & Arcus Restoration,* No. 2014-05-0003, 2015 Tenn. Wrk. Comp. App. Bd. LEXIS 1, at *15 (Tenn. Workers' Comp. App. Bd. Jan. 12, 2015). The burden of proof is on the alleged employer in establishing an independent contractor relationship with an injured worker. *Butler v. Johnson,* 426 S.W.2d 515, 519 (Tenn. 1968).

In her affidavit, which stands unrebutted, Ms. Kleeberg stated the supervisor of

---

[3] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

3

housekeeping at Embassy Suites controlled all aspects of her work (the days and times she came to work, how many hours she worked each day, which rooms she cleaned, and whether she was required to returned to her assigned rooms for additional cleaning.) (T.R. at 4.) Ms. Kleeberg's affidavit also sets forth that Embassy Suites provided all cleaning supplies, equipment, and the uniform she used. *Id.*

While it appears Profit Lines did not deduct withholding and Social Security taxes from Ms. Kleeberg's paychecks (T.R. 3 at 6, 7), all other information in the Court file indicates Ms. Kleeberg was an employee of Profit Line at the time she was injured. Accordingly, Profit Line has not met its burden of proving Ms. Kleeberg was an independent contractor.

### *Ms. Kleeberg's Injury Arose Primarily out of and in the Course and Scope of Employment*

To be compensable under the workers' compensation statutes, an injury must arise primarily out of and in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(13) (2014). In *Hosford v. Red Rover Preschool*, No. 2014-05-0002, 2014 TN Wrk. Comp. App. Bd. LEXIS 1, at *19-20 (Tenn. Workers' Comp. App. Bd. Oct. 2, 2014), the Tennessee Workers' Compensation Appeals Board reiterated the following longstanding principles relative to the determination of compensability:

> An injury occurs in the course of employment if it takes place while the employee was performing a duty he or she was employed to perform. *Fink v. Caudle*, 856 S.W.2d 952, 958 (Tenn. Workers' Comp. Panel 1993). Thus, the course of employment requirement focuses on the time, place, and circumstances of the injury. *Saylor v. Lakeway Trucking, Inc.*, 181 S.W.3d 314, 318 (Tenn. 2005). In contrast, arising out of employment refers to causation. *Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997). An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005). Put another way, the element of causation is satisfied when the "injury has a rational, causal connection to the work." *Braden v. Sears, Roebuck & Co.*, 833 S.W.2d 496, 498 (Tenn. 1992).

Ms. Kleeberg stated in her Petition for Benefit Determination she suffered a "left wrist fracture" on May 9, 2015, when she "slip on wet floor at Chatt Embassy Suites." (T.R. 1 at 1.) In her affidavit, Ms. Kleeberg averred, "I was injured on May 9, 2015, when I slipped on a wet floor, fell and injured my wrist." (T.R. 3 at 4.) In the translated narrative she filed, Ms. Kleeberg wrote, "the male manager asked me: Why did I go to the laundry room? And I told him to pick up linen for a bedroom." (Ex. 10 at 2.)

4

The medical records filed with the Court Clerk indicate Ms. Kleeberg sought treatment of her left-wrist injury the day it occurred. (Ex. 1.) The emergency room physician, who treated Ms. Kleeberg, diagnosed the injury as a broken radius bone in the left wrist and referred her for orthopedic care. (Ex. 1 at 6, 8.) Orthopedic surgeon Dr. J. Woodfin Kennedy recommended surgery, which he soon afterward performed in an out-patient procedure. (Ex. 2.)

Based on the above unrebutted statements, the Court finds that, at a Final Compensation Hearing, Ms. Kleeberg will likely establish she broke her left wrist in the performance of the housekeeping duties Profit Lines hired her to perform.

*Ms. Kleeberg is entitled to Medical Benefits.*

Tennessee Code Annotated section 50-6-204 (2014) requires an employer to provide medical benefits to an employee injured on the job. When the employer fails to give the employee the opportunity to select the treating physician from a panel, the employer runs the risk of having to pay the reasonable cost for treatment of the employee's injuries by a physician of the employee's choice. *See Lindsey v. Strohs Cos.* 830 S.W.2d 899, 902 (Tenn. 1992); *U.S. Fidelity & Guaranty Co. v. Morgan,* 795 S.W.2d 653, 655 (Tenn. 1990).

Ms. Kleeberg reported her left-wrist injury to her supervisor immediately after its occurrence. (Ex. 10, at 2-3.) The supervisor offered to call a taxi to take her for treatment. (Ex. 10, at 2-3.) As she was leaving to go for care, Ms. Kleeberg stated in her translated narrative that, "a Latina supervisor comes up to me, and tells me that Mr. Rudy[4] told her to tell me to tell the hospital that I had an accident in my home, and that he was going to pay all my bills. That I shouldn't worry." (Ex. 10 at 3.)

Ms. Kleeberg stated in her translated narrative she tried "many times" to obtain payment from Profit Line for charges she incurred for treatment of her left-wrist injury. (Ex. 10 at 4.) She stated Profit Line's supervisor told her to "sue him" or "put him in jail." (Ex. 10 at 4.) When Ms. Kleeberg filed a Petition for Benefit Determination to obtain benefits, Profit Lines lodged an "independent contractor" defense instead of paying the claim. (T.R. 2 at 1.)

As discussed above, the medical records submitted to the Court indicate Ms. Kleeberg suffered a broken left wrist on May 9, 2015, when she fell at work. At a Final Compensation Hearing, the Court finds Ms. Kleeberg will likely prevail in establishing that the emergency care she received on the date of injury; her referral to an orthopedic

---

[4]The Court notes "Rudy A. Lugo" signed a Profit Line contract submitted as part of the court record in this claim. (Ex. 6 at 1.)

surgeon; and the surgery to repair her broken left wrist constitute reasonable and necessary medical treatment of her compensable injury.

The Court likewise finds that Ms. Kleeberg gave Profit Line reasonable opportunity to provide authorized treatment, but it failed to avail itself of that opportunity.[5] Accordingly, the Court finds Ms. Kleeberg reasonably sought necessary care on her own for her serious work-related left-wrist injury.

The Court orders Profit Line to pay for the left-wrist treatment Ms. Kleeberg has received to date. The Court also orders Profit Line to authorize and pay for future reasonable and necessary medical treatment of her compensable left-wrist injury under the care of Dr. Kennedy.

*Ms. Kleeberg Is Not Entitled to Temporary Disability Benefits.*

To establish a *prima facie* case for temporary total disability benefits, an employee must show that: (1) he or she was disabled and unable to work as a result of a compensable injury; (2) that a causal connection exists between the injury and the employee's inability to work; and (3) the duration of the period of the employee's disability. *Gray v. Cullom Mach., Tool & Die, Inc.,* 152 S.W.3d 439, 443 (Tenn. 2004); *Jewell,* 2015 TN Wrk. Comp. App. Bd. LEXIS 1, at *21. This Court finds the above factors equally apply to the establishment of a claim for temporary partial disability benefits.

The record is silent as to whether Ms. Kleeberg worked after her injury. Because she bears the burden of proving every element of her claim, including her entitlement to temporary disability benefits, the Court cannot determine the first prong of the *Gray* test set forth above: whether Ms. Kleeberg was disabled and unable to work due to a work injury. For that reason, the Court, at this time, denies Ms. Kleeberg's claim for temporary disability benefits.

---

[5] Profit Line submitted no evidence of its initial investigative efforts of Ms. Kleeberg's claim. Further, Profit Line neither offered a panel nor denied her claim within fifteen days of her notice. The "Claims Handling Standards" provide that, "Decisions on workers' compensation insurance coverage and compensability shall be made within fifteen (15) days of verbal or written notice of accident." Tenn. Comp R. & Regs. 0800-2-14-.08(7) (2015). The Standards provide, "In addition to other penalties provided by applicable law and regulation, violations of any of the above rules shall be subject to enforcement by Commissioner of the Tennessee Department of Labor pursuant to TCA §50-6-419(c)." Tenn. Comp R. & Regs. 0800-2-14-.08(1) (2015) Upon its issuance, a copy of this Order will be provided to the Penalty Program in accordance with Tenn. Comp. R. & Regs. 0800-02-24-.03 (2015) ("In addition to referrals made by a workers' compensation judge, any [Bureau] employee may refer any person or entity to the penalty program for the assessment of a civil penalty whenever the referring employee believes that there may have been a violation of the [Bureau's] rules or the Tennessee Workers' Compensation Act."). The Court reasonably believes there may have been a violation of the Bureau's rules.

**IT IS, THEREFORE, ORDERED** as follows:

1. Profit Line shall provide past and future medical benefits for Ms. Kleeberg's compensable left-wrist injury, including but not limited to payment of all reasonable and necessary treatment of her injury at Erlanger Medical Center and by, and as prescribed by, Dr. J. Woodfin Kennedy. Ms. Kleeberg or the providers shall provide documentation of the incurred charges to Profit Line.

2. The Court, at the present time, denies Ms. Kleeberg's claim for temporary disability benefits.

3. This matter is set for a telephonic Initial (Scheduling) Hearing on December 9, 2015, at 9:00 a.m. Eastern Time.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 23d day of September, 2015.**

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

A Scheduling Hearing has been set with **Judge Thomas Wyatt, Court of Workers' Compensation Claims, at 9:00 a. m. Eastern Time on December 1, 2015. You must call 615-741-3061 or toll-free at 855-747-1721 to participate in the Initial Hearing.**

**Please Note: <u>You must call in on the scheduled date and time to participate.</u> Failure to call in may result in a determination of the issues without your further participation.**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within three business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within three business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order For Medical Benefits was sent to the following recipients by the following methods of service on this the 23d day of September, 2015.

| Name | Certified Mail | Via Email | Service sent to: |
|------|------|------|------|
| Monica Kleeberg, Self-Represented | X | | 4900 Maywater Rd., Ooltewah, TN 37363 |
| Profit Lines Services, Inc., c/o Rudy Lugo, Unrepresented | X | X | Rudylugo123@hotmail.com |
| Compliance Program | | X | WCCompliance.Program@tn.gov |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

9

## APPENDIX

Exhibits:
1. Erlanger Medical Center Records (9 pages);
2. The Plastic Surgery Group VW/Dr. J. Woodfin Kennedy records (5 pages);
3. July 27, 2015 letter from Embassy Suites-Chattanooga-Hamilton Place to the Bureau of Workers' Compensation (1 page);
4. Service Agreement between Embassy Suites-Chattanooga-Hamilton Place and Profit Lines (9 pages);
5. Service Agreement between Embassy Suites and Profit Lines (7 pages);
6. Profit Line contract and forms (4 pages);
7. Blue Cross Blue Shield of Tennessee subrogation notice (2 pages);
8. Certificate of Liability Insurance (2 pages);
9. Narrative statement of Monica Kleeberg (in Spanish) (4 pages); and
10. Narrative statement of Monica Kleeberg (English translation) (9 pages).

Technical record:
1. Petition for Benefit Determination, filed June 12, 2015;
2. Dispute Certification Notice, filed August 4, 2015;
3. Request for Expedited Hearing, with accompanying affidavit, filed August 3, 2015; and
4. Order, filed August 13, 2015.